**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| JAMES LEE KIDDER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 14-cv-225-TLW |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Plaintiff James Lee Kidder seeks judicial review of the decision by the Commissioner of Social Security granting his claim for disability insurance benefits under Title II of the Social Security Act ("SSA"), 42 U.S.C. §§ 416(i), and 423 for the period April 22, 2009 through November 9, 2010, but denying his claim for disability thereafter. In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. (Dkt. 6). Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

**INTRODUCTION**

When reviewing a decision by the Commissioner, this Court is limited to determining whether the Administrative Law Judge ("ALJ") has applied the correct legal standards and whether substantial evidence supports the decision. Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla and less than a preponderance. Id. Substantial evidence is such that a reasonable mind might accept it as adequate to support the Commissioner's conclusion. Id. The court is to "meticulously examine the record as a whole, including anything that might undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." Id. This Court may not re-weigh the evidence, and it

cannot substitute its judgment for that of the Commissioner. Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, the Commissioner's decision stands as long as it is supported by substantial evidence. White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

## BACKGROUND

Plaintiff, then a 58 year old male, protectively filed an application for Title II benefits for a disability allegedly beginning on April 22, 2009. (R. 104-105). Plaintiff's claim for benefits was denied on August 29, 2011, and again upon reconsideration on December 7, 2011. (R. 61-65, 68-70). Plaintiff then filed a written request for a hearing in front of an Administrative Law Judge ("ALJ"). (R. 71). Plaintiff appeared and testified at the hearing on October 19, 2012. (R. 26-47). The ALJ issued a partially favorable opinion on December 14, 2012. (R. 6-25). The Appeals Council denied plaintiff's request for review, and plaintiff timely appealed. (R. 1-4, dkt. 2).

**The ALJ's Decision**

The ALJ found that plaintiff was insured under Title II through December 31, 2014, and disabled under Title II from April 22, 2009 through November 9, 2010. (R. 10-21). Plaintiff had not performed any substantial gainful activity since his alleged disability onset date of April 9, 2009. (R. 13). Plaintiff made an attempt to return to work after his onset date, but the ALJ noted that this attempt was unsuccessful. Id. The ALJ found that plaintiff had the severe impairment of status post cervical spine fusion. (R. 13-14). The ALJ found that plaintiff's alleged impairment of migraines was a non-severe impairment based on the medical evidence. (R. 14). The ALJ held that plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1." Id.

The ALJ summarized plaintiff's testimony and the medical evidence. (R. 14-16). Plaintiff has not worked since April 22, 2009 due to an injury he sustained at work. (R. 15). Dr. Scott Anthony, of Pain Management of Tulsa, treated plaintiff. Id. Plaintiff alleges that he is unable to work due to constant pain in his right arm. Id. Plaintiff says that he can still use his left arm, but he experiences pain after fifteen minutes of doing so. Id. Plaintiff has muscle spasms in his right arm and pain in his neck. Id. When he moves his neck to the right, pain radiates down his right leg. Id. Plaintiff testified that he must rest after standing for more than 30 minutes and that he drives, but only within the Tulsa area. Id. Plaintiff completed his work evaluation test but was bedridden for three days afterwards. Id. Plaintiff says that he experiences migraines two to three times per month, and that these migraines require him to isolate himself in a dark room for four to six hours. Id. Plaintiff says that the most he can lift without pain is twenty to twenty-five pounds. Id.

The ALJ discussed the period from April 20, 2009 through August 12, 2010, a period when plaintiff received chiropractic care from Dr. Brian Flournoy for his complaints of neck pain, numbness, tingling, and pain in his right arm. Id. An MRI conducted on May 1, 2009, showed that plaintiff had posterior annual tearing and various disk protrusions from C3-4 through C6-7. Id. Plaintiff underwent three steroid injections on May 14, 2009, June 10, 2009, and September 7, 2009. Id. The ALJ noted that plaintiff expressed his desire to avoid surgery, but after Dr. Flournoy explained that he would soon reach his maximum level of medical improvement without surgery, plaintiff agreed to undergo surgery. Id.

After seeing Dr. Flournoy, plaintiff saw Dr. Daniel Morris for pain management treatment, and Dr. Morris also recommended surgery, referring plaintiff to Dr. John Marouk D.O.. (R. 16). Plaintiff underwent a surgical consultation on June 21, 2010. Id. Dr. Marouk

consulted with plaintiff over a possible anterior cervical fusion. Id. Dr. Marouk diagnosed plaintiff with ruptured discs at C5-6 and C6-7. Id. Plaintiff underwent surgery on July 1, 2010. Id.

On January 17, 2011, Kenneth R. Trinidad, D.O. completed a worker's compensation evaluation of plaintiff's capacity to return to work. Id. Dr. Trinidad expressed doubt that any further therapy would alter plaintiff's clinical circumstances and that plaintiff had achieved maximum medical recovery. Id. Dr. Trinidad further opined that plaintiff would not be able to return to his past job and recommended vocational re-training so that plaintiff could be placed in a light duty job. Id.

The ALJ noted that worker's compensation determinations "are not dispositive of a claim made under Social Security." Id. The ALJ noted that worker's compensation claims deal with a claimant's capacity to perform work for a particular employer, while under Social Security, "the issue is the claimant's residual functional capacity to perform work that exists in the much broader, national economy." Id. For these reasons the ALJ gave some, but not controlling, weight to Dr. Trinidad's opinion. Id. The ALJ gave great weight to the opinion of Dr. Marouk as plaintiff's treating physician. Dr. Marouk "opined that the claimant did not have the capacity to perform work activity following a cervical disk fusion." Id. The ALJ noted that Dr. Marouk's opinion was consistent with the medical evidence prior to the date of medical improvement, November 9, 2010. Id.

The ALJ held that from April 22, 2009 through November 9, 2010, plaintiff was unable to perform any past relevant work activities. Id. The ALJ considered plaintiff's age, education, work experience, and residual functional capacity ("RFC"). (R. 17). Plaintiff is an individual of advanced age, has at least a high school education, and has no job skills that transfer to other

occupations within his RFC as of his disability onset date. Id. The ALJ relied on a vocational expert's opinion that plaintiff's past relevant work as a shipping and receiving clerk was a medium exertional level job and that it exceeded plaintiff's RFC during this time period. Id. The ALJ held that no jobs existed in significant numbers within the national economy that he could perform for the time period April 22, 2009 through November 9, 2010. Id. Thus, the ALJ concluded that plaintiff was under a disability under the Social Security Act from April 22, 2009 through November 9, 2010. Id.

The ALJ held that as of November 10, 2010, the date of medical improvement, plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. Id.

The ALJ determined that plaintiff's allegations regarding the intensity and limiting effects of his symptoms were not credible beginning November 10, 2010. (R. 18-20). As support for this finding, the ALJ concluded those allegations were inconsistent with the results of Dr. Bird's RFC assessment. (R. 19). Dr. Carmen Bird conducted an RFC analysis on August 24, 2011. (R. 384-391). Dr. Bird opined that plaintiff had the capacity to lift and/or carry fifty pounds occasionally and twenty-five pounds frequently. (R. 385). Dr. Bird further opined that plaintiff has no postural, manipulative, visual, communicative, or environmental limitations, and that he can walk for six hours in an eight hour workday, as well as sit for six hours of an eight hour workday with normal breaks. Id. The ALJ found plaintiff's testimony that he had difficulty lifting more than 20 pounds was inconsistent with the evidence showing that plaintiff had lifted seventy pounds during the Functional Capacity Evaluation ("FCE") performed by Mr. Brian Aquillard, A.T.C. on November 9, 2010. (R. 18). The ALJ also held that plaintiff's testimony regarding his leg pain was inconsistent with his activities. (R. 19). Plaintiff testified that he could

only stand for 30 minutes, but the function report plaintiff completed on June 3, 2011 indicated otherwise to the ALJ, who noted plaintiff reported that he prepared full meals for his family, went grocery shopping, and did household chores. Id.

The ALJ noted that plaintiff maintained a good work record prior to the date of his injury, but that plaintiff's statements regarding the intensity, persistence, and limiting effects of his pain were inconsistent with the evidence provided in Dr. Bird's RFC assessment. Id. The ALJ stated that plaintiff "said that he feel [sic] normal."[1] Id.

The ALJ held that medical improvement occurred as of November 10, 2010, and that the improvement related to plaintiff's ability to work because there was an increase in his RFC. (R. 18). The ALJ found that plaintiff could perform the full range of medium work as defined in 20 C.F.R. § 404.1567(c) as of that date. (R. 18).

The ALJ held that plaintiff was still unable to perform past relevant work, but that he could perform the full range of medium work according to the medical evidence from his RFC and FCE examinations. (R. 20). Relying on the opinion of the vocational expert, the ALJ held that there are jobs that exist in the national economy in significant numbers that plaintiff can perform, whether or not plaintiff has any transferable job skills. Id.

**Medical Records**

Plaintiff underwent a functional capacity evaluation with Mr. Aquillard, a physical therapist, on November 9, 2010. (R. 270). Mr. Aquillard opined that plaintiff demonstrated heavy physical demand level. Id. Plaintiff demonstrated the ability to lift seventy pounds occasionally and fifty-five pounds frequently, with a constant work rate for walking, bending, reaching, sitting, and standing. Id. Plaintiff could not complete the overhead-reaching portion of

---

[1] The ALJ stated that plaintiff said that he "feel normal," a misstatement on the part of the ALJ that is discussed further below.

the examination, which consists of reaching over one's head to move a peg into various slots. (R. 281). Plaintiff reported a pain rating of 6/10 during this test. Id. Plaintiff demonstrated a five out of six validity score on his reliability/validity tests. (R. 270).

The ALJ gave great weight to Dr. Bird's RFC analysis (R. 19), which synthesized the opinions of Drs. Anthony and Trinidad, as well as the FCE conducted by Mr. Aquillard. (R. 386, 390). In her assessment, Dr. Bird opined that plaintiff could lift up to fifty pounds occasionally, lift twenty-five pounds frequently, and sit/stand/walk for up to six hours of a regular work day. (R. 385). This lifting capacity is less than Mr. Aquillard gave plaintiff on his FCE evaluation. (R. 270).

## ANALYSIS

On appeal, plaintiff raises three errors. First, plaintiff argues that the ALJ erred by failing to include all of plaintiff's impairments in his RFC. (Dkt. 12). Second, plaintiff argues that the ALJ erred in determining that plaintiff did not meet a listing. Id. Third, plaintiff argues that the ALJ improperly assessed plaintiff's credibility. Id.

**RFC Analysis**

Plaintiff initially argues that the ALJ erred when he failed to find that a number of plaintiff's impairments were severe at step two of the sequential evaluation process. Plaintiff correctly states that he need only make a *de minimus* showing that an impairment exists at step two. (Dkt. 12 at 2), citing Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997). The Commissioner argues that because the ALJ conducted a step four analysis, any failure at step two is harmless. In addition, the Commissioner argues that the ALJ took into account all of plaintiff's impairments, both severe and non-severe, in his RFC analysis. (Dkt. 13).

The Tenth Circuit has held that the failure to identify an impairment as severe at step two is harmless error if the ALJ proceeds to the next step in the sequential evaluation.[2] Carpenter v. Astrue, 537 F.3d 1264, 1266 (10th Cir. 2008); Hill v. Astrue, 289 F. App'x 289, 292 (10th Cir. 2008) (unpublished)[3]; Oldham v. Astrue, 509 F.3d 1254, 1256 (10th Cir. 2007). Thus, once an ALJ finds that a claimant has at least one severe impairment, a failure to designate another impairment as "severe" at step two does not constitute reversible error because at later steps, the agency "consider[s] the combined effects of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." Brescia v. Astrue, 287 F. App'x 626 (10th Cir. 2008) (unpublished) (quoting Maziarz v. Sec'y of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987)). Here, the ALJ found a severe impairment at step two and continued to complete the five-step analysis. Therefore, any error by the ALJ at step two was harmless. See 20 C.F.R. § 404.1520(c).

As to plaintiff's RFC, the ALJ must consider the combined effect of all medically determinable impairments. Wells v. Colvin, 727 F.3d 1061, 1065 (10th Cir. 2013). Plaintiff contends that the ALJ did not properly consider impairments to his back and shoulder when formulating his RFC. (Dkt. 12 at 2). The Commissioner argues that the ALJ did consider plaintiff's back impairment, and that although the ALJ did not specifically reference plaintiff's right arm and shoulder problems as "severe impairments," the ALJ considered plaintiff's "status post cervical spine fusion" an impairment which encompasses ". . . any upper extremity problems because they stemmed from plaintiff's cervical spine problems." (Dkt. 13). The

---

[2] The more detailed analysis of the impairment(s) is required at step four, which evaluates whether or not a claimant can return to past relevant work ("PRW"). Id. At step four, the ALJ is required to provide a detailed RFC analysis to support his decision. Hinkle, 132 F.3d at 1352.

[3] 10th Cir. R. 32.1 provides that "[u]npublished opinions are not precedential, but may be cited for their persuasive value."

Commissioner further argues that the ALJ evaluated all of plaintiff's alleged functional limitations as part of his RFC analysis. Id.

In formulating his RFC assessment, the ALJ relied on the opinion of Dr. Anthony and the progress notes of Dr. Ruffing. (R. 18-19). The ALJ also gave great weight to the RFC assessment of Dr. Bird. (R. 19).

As to plaintiff's shoulder, the ALJ only mentioned this alleged impairment once, noting that during his functional capacity evaluation plaintiff "did not demonstrate the ability to complete the frequent upper level-reaching test." (R. 18). Dr. Hendricks, one of plaintiff's treating physicians, referred him to Mr. Aquillard for an FCE assessment. (R. 330, 339). The ALJ relied on the FCE assessment compiled by Mr. Aquillard on November 9, 2010 (R. 18), the function report filled out by plaintiff on June 3, 2011 (R. 121), and the RFC compiled by Dr. Bird on August 24, 2011 (R. 384). Although the ALJ did not discuss the weight that he gave to Mr. Aquillard's evaluation, it appears that he relied on that evaluation in determining plaintiff's RFC because he found that plaintiff's disability ended on November 10, 2010, the day after plaintiff's FCE examination by Mr. Aquillard. (R. 18, 268).

The ALJ correctly summarized the findings of Mr. Aquillard's FCE assessment, but ignored the fact that plaintiff failed to complete the upper level reaching test. (R. 18, 281).[4] Evidence from other sources such as physical therapists may be used "to show the severity of the individual's impairment(s) and how it affects the individual's ability to function." Social Security Ruling 06-03p, 71 Fed.Reg. 45593, 45594 (2006). The ALJ generally should explain the

---

[4] While a physical therapist does not qualify as an "acceptable medical source" under the regulations, 20 C.F.R. § 404.1513(a), physical therapists do qualify as "other sources." Id. § 404.1513(e). As such, a physical therapist's opinion can be considered, but the opinion is entitled to less weight than that accorded to the opinions of acceptable medical sources. See Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). The ALJ was entitled to consider the physical therapist's opinion in conjunction with the opinions of acceptable medical sources.

weight given to opinions from these other sources or otherwise ensure that the discussion of the evidence in the decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning. 20 C.F.R. § 404.1527. Because the ALJ did not explain why he relied on parts of Mr. Aguillard's FCE results while ignoring his report that plaintiff was unable to complete the upper level reaching test, the Court cannot say the ALJ's conclusion is supported by substantial evidence. The ALJ has not met his burden to consider the full record in this respect. Hinkle, 132 F.3d at 1352.

The ALJ also gave "great weight" to Dr. Bird's opinion. (R. 19). Dr. Bird's assessment cleared plaintiff to lift seventy pounds occasionally, and fifty-five pounds frequently. Id. Dr. Bird cited the opinions of Mr. Aquillard, Dr. Trinidad, and Dr. Anthony in her RFC assessment. (R. 384-391). Dr. Bird did not assess any limitation in plaintiff's ability to reach, despite citing the FCE assessment by Mr. Aquillard, which shows that plaintiff did not complete the upper-level reaching test. (R. 281).

In plaintiff's function report, he indicated that he had difficulty reaching. (R. 126). The ALJ mentions plaintiff's function report in his opinion, but does not mention plaintiff's shoulder impairments in his discussion. (R. 19). Plaintiff's report of shoulder issues on his function report is consistent with his results on the upper-level reaching portion of his FCE assessment with Mr. Aquillard, as well as the opinions of Drs. Anthony and Marouk, which the ALJ afforded great weight when he determined plaintiff was disabled through November 9, 2010. (R.16, 259, 260, 262, 419, 433).

As indicated above, the ALJ acknowledged that plaintiff failed to complete the overhead reaching test during the FCE examination, but it appears that he ignored other medical evidence highlighting plaintiff's shoulder injury as well. (R. 18). The ALJ gave the RFC assessment

conducted by Dr. Bird great weight. (R. 19). This assessment considered some, but not all of plaintiff's treating physicians' opinions. For example, Dr. Bird's assessment cited the opinions of Drs. Anthony and Trinidad, but did not mention the opinion of Dr. Morris, plaintiff's pain management doctor. (R 385-386). Dr. Morris specifically noted that plaintiff had a probable torn rotator cuff in a 2010 report to Dr. Flournoy. (R. 367). Dr. Bird's assessment also failed to address the opinions of Drs. Flournoy and Marouk, who treated plaintiff during his pre-op and post-op examinations.

The ALJ must consider the combined effect of all of the medically determinable impairments at step four of the sequential evaluation process. Wells, 727 F.3d at 1065. The ALJ relied most heavily on the medical examinations and tests conducted by Dr. Trinidad, Dr. Bird, and Mr. Aquillard. (R. 15-16, 18). All three of these examinations, as well as the main weight of medical evidence, indicate that plaintiff's shoulder impairment should have been addressed as part of the ALJ's determination that plaintiff's impairment medically improved on November 10, 2010. The ALJ cited to certain parts of the record to support his decision, but ignored other relevant parts that he should have considered. Because the ALJ did not discuss any possible shoulder limitation in his RFC, he failed to address all of plaintiff's impairments in his analysis. Remand is required, therefore, so that the ALJ can explain his rationale and cite the evidentiary support for his conclusion that plaintiff was no longer disabled on November 10, 2010.

**Listing 1.04**

Plaintiff claims that he meets the requirements of Listing 1.04(A), which requires:

> Disorders of the Spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.
>
> With:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss, and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);…

20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 1.04, 1.04(A). For a claimant's impairment to match a listing, it must meet *all* of the specified medical criteria in the listing. An impairment that manifests only some of those criteria does not qualify. (Dkt. 13), (citing Sullivan v. Zebley, 493 U.S. 521, 530 (1990). (emphasis in original)).

Plaintiff cites to several pieces of evidence to support the argument that he meets listing 1.04. (Dkt. 12 at 6-7). Plaintiff first cites to a May 1, 2009 MRI to show that he had disc protrusion at C3-4 through C6-7 and a possible compromise of the C5 nerve root. Id. The ALJ cited to substantial medical evidence indicating that he took this MRI into consideration. Dr. Marouk diagnosed plaintiff with ruptured disks at C5-6 and C5-7, which was why plaintiff underwent surgery. (R. 266). In Dr. Marouk's follow-up evaluation, he noted plaintiff's disk herniation at the C3-4 level, indicating that "[F]rankly this is the best level I see in his neck." Id. The record indicates that Dr. Marouk agreed with the MRI plaintiff cited in his brief, and that the ALJ appropriately considered Dr. Marouk's opinion, which contained the same information.

Plaintiff also contends that the ALJ ignored evidence of persistent radiculopathy and loss of range of motion in the neck, pertaining to listing 1.04(A). (Dkt. 12 at 6). The ALJ acknowledged plaintiff's radiculopathy when he noted that plaintiff had radiating pain down his arm, which is supported by substantial evidence, and is one of plaintiff's principle medical issues. (R. 15). The ALJ noted plaintiff's loss of motion in his neck when he discussed the medical evidence. Id. The ALJ mentioned plaintiff's testimony that he could not turn his head to the right because it would cause pain to radiate down his leg. Id. Finally, plaintiff contends that

the ALJ ignored evidence of plaintiff's impingement of the C5 nerve root, that his symptoms have been ongoing, and that surgery has not corrected them. (Dkt. 12 at 6).

It is apparent that the ALJ appropriately considered the evidence to determine that plaintiff does not meet listing 1.04(A). The ALJ addressed plaintiff's impingement of the C5 nerve root and noted that the MRI revealing this injury occurred before plaintiff underwent cervical spine fusion surgery. (R. 16). The ALJ also acknowledged that plaintiff's symptoms are ongoing. The ALJ stated that he gave some weight to Dr. Trinidad's opinion, which indicated that plaintiff had not made a full recovery. Id.

Dr. Trinidad opined that plaintiff had achieved maximum medical recovery and recommended that he be placed in a light-duty job. Id. However, as discussed above, the ALJ gave Dr. Trinidad's opinion only some weight because his opinions were made in the context of a Worker's Compensation claim. Id. Dr. Anthony also stated that plaintiff had done "reasonably well" after surgery, and that if plaintiff wanted to continue improvement, he would need to adhere to a regimen of physical exercise. (R. 439). The ALJ also noted Dr. Bird's opinion that plaintiff could return to normal work activity. (R. 19). Thus, there is substantial evidence in the record to support the ALJ's decision on this issue.

Plaintiff contends that he still meets listing 1.04(A) on the grounds that the ALJ did not take the medical evidence into account showing that plaintiff had spinal stenosis, possible compromise of the C5 nerve root, and disc degeneration. (Dkt. 12). Plaintiff further contends that plaintiff's doctors diagnosed him with cervical radiculopathy and decreased range of motion in the neck. Id. Upon review of both the record and the ALJ's decision, it is apparent that the ALJ correctly analyzed the record in deciding that plaintiff does not meet a listing. The ALJ noted plaintiff's radiating pain to the right arm, decreased sensation in the right side of plaintiff's back,

and cervical disc fusion. (R. 15-16). The ALJ correctly reviewed the record in determining that plaintiff did not meet a listing. (R. 18).

**Credibility**

Plaintiff contends that the ALJ failed to render a proper credibility analysis, using "boilerplate" language to support his conclusion without citing any actual findings. (Dkt. 12). It is true that "[s]tandard boilerplate language will not suffice" in an ALJ's credibility assessment. Hardman v. Barnhart, 392 F.2d 676, 678 (10th Cir. 2004, (citing Briggs *ex rel.* Briggs v. Massanari, 248 F.3d 1235, 1239 (10th Cir. 2001)). The ALJ must make actual findings of fact during his credibility analysis, and support his conclusions with consistent medical evidence from the record. See id. at 679.

The Court disagrees with plaintiff's allegation that the ALJ did not consider or mention the level of pain plaintiff reported during his assessments. (Dkt. 12 at 7). The ALJ did mention the range of pain that plaintiff recorded during his assessments. (R. 18). Nonetheless, because the ALJ must reevaluate plaintiff's RFC as of November 10, 2010, based upon proper review of the medical and "other source" evidence,[5] he will necessarily have to revisit his credibility finding for that time period as well.

## CONCLUSION

For these reasons, the ALJ's decision finding plaintiff not disabled is **REVERSED** and **REMANDED.** On remand, the ALJ should reconsider all of plaintiff's impairments at step four of the Sequential Evaluation Process, and the medical and other source evidence in determining that plaintiff's period of disability ended on November 10, 2010. See Newbold v. Colvin, 718

---

[5] This includes the opinions of Dr. Marouk, Dr. Hendricks, Dr. Anthony, and Dr. Trinidad. The ALJ should include in his medical improvement RFC, any limitations related to plaintiff's shoulder impairment, or any other residual impairment related to the "status post-cervical spine fusion" which was the impairment for which disability was granted as of April 22, 2009.

14

F.3d 1257, 1262 (10th Cir. 2012) (holding that in a "closed period" case the ALJ must determine whether there has been any medical improvement in the claimant's impairment(s) and, if so, whether this medical improvement is related to his ability to work) (citing 20 C.F.R. § 404.1594(a) (To determine whether medical improvement has occurred, the ALJ must compare the medical severity of the current impairment(s) to the severity of the impairment(s) which was present at the time of the most recent favorable medical decision finding the claimant disabled)). The ALJ must assess a claimant's RFC after any medical improvements and then compare the new RFC with the RFC before the medical improvements. Sheperd v. Apfel, 184 F.3d 1196, 1201 n.5 (10th Cir. 1999) (quoting Newbold, 718 F.3d at 1262) ("If the claimant can perform either [his] past relevant work or other work, disability will be found to have ended."). The ALJ's opinion is affirmed in all other respects.

  SO ORDERED this 30th day of September, 2015.

_____
T. Lane Wilson
United States Magistrate Judge